Filed 2/16/23  P. v. Glave CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077687 |
| v. | (Super. Ct. No. INF2001209) |
| BEAU RICHARD GLAVE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rene Navarro, Judge.

Affirmed in part, remanded in part with directions.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

# INTRODUCTION

In this domestic violence case, defendant Beau Glave appeals from the judgment entered following jury convictions for corporal injury with a prior conviction (Pen. Code, § 273.5, subd. (f)(1)[1]; count 1), assault with a deadly weapon (§ 245, subd. (a)(1); count 2), and misdemeanor child endangerment (§ 273a; count 3), which the trial court dismissed. The trial court sentenced defendant to six years in prison.

Defendant contends the trial court violated his Sixth Amendment right to confront witnesses against him by admitting into evidence the first 18 minutes of the victim's videotaped statement taken by Officer Mason. Defendant also argues the trial court abused its discretion by failing to stay the sentence on count 2 under section 654.

In supplemental briefing, defendant contends the trial court committed *Yurko*[2] error by failing to advise defendant before he admitted a prior conviction, that admission of the prior conviction allegation would support imposition of an upper prison term on count 1. In addition, defendant argues that Senate Bill No. 567 (2021-2022 Reg. Sess.) (S.B. 567) requires that his sentence be vacated and the case remanded for resentencing, because the trial court imposed the upper term on count 1 based on aggravated factors which were not stipulated to or decided by the jury or court. Also, defendant argues that

---

[1]   Unless otherwise noted, all statutory references are to the Penal Code.

[2]   *In re Yurko* (1974) 10 Cal.3d 857 (*Yurko*).

the trial court's reliance on the prior conviction as an aggravated factor was improper because it was also used to satisfy an element of his count 1 conviction.

We reject defendant's contentions, with the exception that under S.B. 567, defendant's sentence must be vacated and the matter remanded for resentencing. The judgment of conviction is thus affirmed but defendant's sentence is ordered vacated, with the matter remanded for resentencing.

II.

FACTS

On August 1, 2020, at around 8:00 a.m., R.L. was staying in room number 209, on the second floor of a Motel 6. R.L.'s room was directly above room 109, where Jane Doe, defendant, and their two-year-old daughter were staying. R.L. heard loud arguing in the room below hers. She stepped outside, looked over the balcony rail, and saw defendant chasing Doe, while yelling at her that she was going to die. Defendant swung his arms as if he was trying to grab and hit her. R.L. testified he was "trying to beat [Doe] up" and "calling her bad words." Doe yelled that defendant was going to kill her. She yelled for help and for someone to call the police. R.L. yelled at defendant to leave Doe alone and said she was going to call the police. Using profanity, defendant told R.L. to mind her own business, which prompted R.L. to take a photograph of defendant.

Around that same time, the motel maintenance man, M.H., saw Doe sitting outside the door of her motel room, crying. She told M.H. that defendant had been hitting her. Defendant exited the room, pushed M.H. twice towards the parking area and told him to

3

mind his own business. Doe stood up and ran towards the front motel office, with defendant chasing her. M.H. let Doe enter the motel's employee breakroom and shut the door. Defendant did not attempt to enter, and left.

R.L. testified she saw M.H. in the parking lot and saw Doe standing behind M.H. to avoid getting hurt. Defendant appeared enraged. After R.L. took a photograph of defendant, he rode away on his bicycle and R.L. called the police.

At M.H.'s request, the motel manager, B.J., also called 911 to report the domestic violence incident. During the recorded call, B.J. reported that Doe was in the motel employee breakroom and defendant was walking his bicycle eastbound on Highway 111. B.J. described defendant as in his mid-20s to mid-30s and white or Hispanic. B.J. further reported that Doe had a "busted lip" and "maybe a slight concussion" but Doe did not want medical assistance. R.L. testified she saw slight swelling and pinkness around Doe's eyebrows. B.J. said she did not see any weapons.

Police officers Mason and Perez arrived at the motel at 8:10 a.m., within five to 10 minutes after receiving the dispatch call. When they arrived, Doe was in the motel employee breakroom, where she remained during their initial investigation. R.L. told the officers defendant had taken off on a bike and showed them her photograph of defendant.

At around 8:00 a.m., Police Officer Zanercik received a dispatch call regarding the domestic violence incident. He was provided with a description of defendant and was told defendant had fled on foot. Officer Zanercik searched for defendant in the area near

the motel. Meanwhile, Officer Mason conducted a videotaped interview of Doe, the first 18 minutes of which was shown to the jury.

Officer Mason testified at trial that when he first encountered Doe, she was crying and appeared scared and "dazed." Her hair was "messed up" and her face's pinkish skin tone appeared inconsistent with her overall skin tone. Throughout the interview Doe at times seemed to have difficulty formulating her thoughts and touched her head several times. During the 18-minute portion of the interview shown to the jury, Doe described what had happened when defendant assaulted her. She said the incident was triggered when defendant became angry because she was going to answer his phone and because she then told him she was not going to continue paying for the room for him. Doe stated that defendant hit her in the face with a closed fist approximately 20 times, repeatedly hit her on the back and legs with a chair while she lay on the bed with her daughter, and "whacked the back of [her] head" with the chair or his fists, as she was trying to leave the motel room. She said defendant struck her so hard she thought she was going to die. The blow to her head impacted her vision and breath. Officer Mason told Doe he was going to call the paramedics to evaluate her. When Doe provided Officer Mason with a description of defendant, Officer Mason provided dispatch with the information over the radio.

While Officer Mason was interviewing Doe, Officer Zanercik located defendant on Highway 111. Defendant denied having been involved in the Motel 6 incident. Officer Zanercik transported defendant to the motel, where M.H. identified him as the

5

person involved in the incident. When Officer Zanercik took photographs of room 109, he noticed the motel room telephone was off the hook and a chair with metal legs and a wooden seat and backrest was on one of the beds. Officers Zanercik and Mason took photographs of Doe in the breakroom. She had a small cut on her bottom lip, two scratches on her upper back, one of which appeared fresh, and a slightly pinkish, puffy face. Doe reported pain in her leg or thigh.

The day after the incident, defendant called Doe from jail and told her, "You put me in jail." Doe responded, "Uh, you whipped my ass." Defendant replied, "No, because you answered my phone when I said don't answer my phone [and] you said you do whatever you want."

During the trial, propensity evidence was admitted under Evidence Code section 1109. That evidence included evidence that in 2015, defendant was convicted of two counts of corporal injury against Doe (§ 273.5, subd. (a)). The evidence was also used to prove the prior conviction element required to prove count 1 (corporal injury with a prior; § 273.5, subd. (f)(1)).

## III.

## ADMISSIBILITY OF DOE'S VIDEOTAPED INTERVIEW STATEMENT

Defendant contends the trial court erred in granting the prosecution's pretrial motion in limine requesting admission of the first 18 minutes of the 55-minute video of Officer Mason's interview of Doe, who was unavailable at trial. The trial court

6

simultaneously heard and denied defendant's reciprocal motion in limine to exclude the statement.

The prosecution argued during the hearing that the statement was admissible as a spontaneous statement under Evidence Code section 1240, and was nontestimonial because it was taken during an ongoing emergency, in which Officer Mason was attempting to obtain information to locate and apprehend defendant, who posed a danger to the public. The prosecutor noted that, before fleeing, defendant had pushed M.H., the motel maintenance man who attempted to assist Doe. Defendant had also been verbally hostile to a motel guest, R.L. In addition, the videotaped interview showed Doe visibly shaken, trembling, and struggling to remember basic facts such as her daughter's date of birth. The People agreed that once defendant was taken into custody, the statement was no longer nontestimonial because the ongoing emergency ended, because there was no longer a threat to the public.

Defense counsel argued that Doe's statement was not a spontaneous statement under Evidence Code section 1240, and was an inadmissible testimonial statement because there was no ongoing emergency. Doe was safely sequestered in the motel employee breakroom and Officer Mason's questions focused on defendant's past actions.

After viewing the videotaped interview, the trial court granted the prosecution's motion in limine to admit the first 18 minutes of the video of Doe's interview. The court found that the spontaneous statement hearsay exception applied and that the initial 18-minute portion of the interview was non-testimonial. Therefore the court permitted

7

admission of the Doe's recorded statement up to page 13, line 14 of the interview transcript, when the ongoing emergency ceased upon defendant's apprehension while Officer Mason was interviewing Doe. The subsequent portion of the interview recording was not shown to the jury.

When ruling on the motion in limine, the trial court stated: "So I think we have a clear understanding now in terms of the [c]ourt's ruling pursuant to the *Crawford* analysis and also the *Ohio v. Roberts* [(1980) 448 U.S. 56] decision and standard that the [c]ourt finds that the statements made by (Ms. Doe) fall within the hearsay exception of 1240 were made spontaneously while the declarant was under the stress and excitement and the powers of the declarant were still in abeyance. One can readily see in the video how (Ms. Doe) was distraught and at times confused, was nervous, was obviously in pain in describing the events. I think the basis has been laid for the admissibility under 1240."

A. *Summary of Doe's Videotaped Interview*

For purposes of determining whether Doe's statement is testimonial, the following is a summary of the 18-minute portion of her interview.

Officer Mason asked Doe how she was doing. She said she was okay but she had some pain. Officer Mason asked if she was hit or kicked. Doe said the perpetrator threw a chair that was in the motel room at her and hit her with it. Officer Mason asked her how the perpetrator was connected with her. Doe said defendant was her daughter's father and Doe's ex-boyfriend. Officer Mason asked if she and defendant stayed

8

together.  Doe said he did for a little while but she told him that morning that she was not going to continue paying for a room for him.  Defendant got angry and started hitting her.

Officer Mason asked Doe for her name and address.  Officer Perez interjected that he had been provided with a photograph of defendant, which Officer Mason could look at on the telephone of a motel guest.  Officer Perez added that defendant was on a bike.  Officer Mason asked Doe when she checked into the hotel and requested her telephone number and daughter's name and date of birth.  Doe said she checked in with her daughter and defendant but could not remember her daughter's birth date.  Doe said she forgot it.  "I just can't think right now."  She then remembered the date and told Officer Mason.

Officer Mason asked Doe when the incident started.  Doe said it happened within five minutes, around 8:00 a.m.  Officer Mason asked what room it happened in.  Doe said room 109.  Officer Mason asked what started the fight.  Doe said defendant got mad when she attempted to answer his phone and when she told him she wasn't going to pay for his room anymore.  Defendant "snapped" and started hitting her.  She said she was going to call the police.  Defendant got angrier, picked up a chair and began swinging it.  Doe tried to leave the room to get help and avoid getting hit by the chair.  Before leaving, she tried to grab his phone because it had her debit card on it and she didn't want him to use it.

Officer Mason asked Doe if she needed medical attention.  Doe said no.  Officer Mason asked for defendant's name, date of birth, and address.  Doe provided the

9

requested information, except for defendant's address. She said he didn't have an address. Officer Mason asked Doe if he hit her with his fist or open hand. Doe said he hit her face with his fists about 20 times, and hit her legs with the chair while she was kicking him while lying on the bed. Defendant also hit Doe with the chair a couple of times on her leg and on her back. Her daughter was next to her on the bed. Doe tried to run out the door to call for help. She was bleeding a little and her leg hurt.

The motel maintenance man, M.H., interjected during Doe's interview that Doe went outside her room and asked for help because she felt like she was going to faint. Doe added that defendant "whacked" the back of her head "really hard" when she opened the motel room door. M.H. stated that when he came around the corner, he saw her yelling for help. He went over and Doe told him what was happening. He called the motel manager and told her to call the police because defendant was beating Doe.

Officer Mason asked Doe if defendant used his hands or the chair. Doe said she didn't remember but knew he hit her really hard. "[I]t was weird, like I thought I was gonna die because when he hit me that hard, it was just like everything in my, my, like my vision and everything just changed . . . . [M]y breath started getting really short. . . . So I thought maybe he hit like I don't know, I just thought I was gonna pass out . . . ."

Officer Mason told Doe he was going to have the paramedics check her out. Doe said that was okay. Officer Mason then requested Cal Fire to respond to the scene for Doe. Officer Mason asked how long Doe had known defendant and when she started dating him. She said she started dating him seven or eight days before but had known

10

him about eight years and had been with him about five years.[3] Officer Mason told Doe he was going to take a couple of photographs of her, at which point the 18-minute portion of Doe's interview ended.

B. *Applicable Law*

Defendant contends Doe's 18-minute videotaped statement was testimonial. We disagree. Under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), the confrontation clause of the Sixth Amendment to the federal Constitution prohibits "admission of *testimonial* statements of . . . witness[es] who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Id.* at pp. 53-54, italics added.)

In *Davis v. Washington* (2006) 547 U.S. 813 (*Davis*), our high court explained that ""'[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'"" (*People v. Chism* (2014) 58 Cal.4th 1266, 1288, quoting *People v. Romero* (2008) 44 Cal.4th 386, 421 (*Romero*).)

The California Supreme Court in *People v. Chism*, *supra*, 58 Cal.4th at pages 1288-1289, noted that, "[a]fter *Crawford*, the high court has emphasized that '"not all

---

[3] We acknowledge this is confusing but this is what Doe told Officer Mason, without any further elaboration.

11

those questioned by the police are witnesses" for purposes of the Sixth Amendment and not all "'interrogations by law enforcement officers' [citation], are subject to the Confrontation Clause." [Citations.]' [Citation.]" As the court observed in *People v. Cage* (2007) 40 Cal.4th 965, "statements are not testimonial simply because they might reasonably be used in a later criminal trial. Rather, a critical consideration is the primary purpose of the police in eliciting the statements. Statements are testimonial if the primary purpose was to produce evidence for possible use at a criminal trial; they are nontestimonial if the primary purpose is to deal with a contemporaneous emergency such as assessing the situation, dealing with threats, or apprehending a perpetrator." (*Romero*, *supra*, at p. 422; *Cage*, *supra*, at p. 984; *Davis*, *supra*, 547 U.S. at p. 832.)

In *Michigan v. Bryant* (2011) 562 U.S. 344 (*Bryant*), the United States Supreme Court clarified that "there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." (*Id*. at p. 358.) As noted in *People v. Sanchez* (2016) 63 Cal.4th 665, 689, fn. 14, "[t]he existence of an ongoing emergency 'is not the touchstone of the testimonial inquiry' [citation] but is 'simply one factor . . . that informs the ultimate inquiry regarding the "primary purpose" of an interrogation' [citation]." (*People v. Sanchez*, *supra*, at p. 689, fn. 14, quoting *Bryant, supra*, at pp. 374, 366, respectively.)

Our high court has not settled on a clear definition of what makes a statement testimonial. (*People v. Leon* (2015) 61 Cal.4th 569, 603.) However, our State supreme court has listed the following factors as relevant to determining whether a statement made

12

in the course of police questioning is testimonial: "(1) an objective evaluation of the circumstances of the encounter and the statements and actions of the individuals involved in the encounter; (2) whether the statements were made during an ongoing emergency or under circumstances that reasonably appeared to present an emergency, or were obtained for purposes other than for use by the prosecution at trial; (3) whether any actual or perceived emergency presented an ongoing threat to first responders or the public; (4) the declarant's medical condition; (5) whether the focus of the interrogation had shifted from addressing an ongoing emergency to obtaining evidence for trial; and (6) the informality of the statement and the circumstances under which it was obtained." (*People v. Chism*, *supra*, 58 Cal.4th at p. 1289, citing *People v. Blacksher* (2011) 52 Cal.4th 769, 814-815.) This court independently reviews whether a statement is testimonial under *Crawford* and the Sixth Amendment. (*People v. Nelson* (2010) 190 Cal.App.4th 1453, 1466.)

C. *Analysis*

Defendant contends that admission of Doe's videotaped interview by Officer Mason violated his Sixth Amendment right to confront an adverse witness because it was primarily intended to create an out-of-court substitute for trial testimony and was therefore inadmissible testimonial hearsay. Defendant argues the interview was not intended to assist officers in identifying and apprehending defendant because the officers were already informed early on of his description and that he had fled.

We conclude Officer Mason's initial questioning of Doe was proper because it served the purpose of assisting in confirming defendant's identity, location, involvement

13

in the assault, and risk of harm to the officers and public. (*Bryant*, *supra*, 562 U.S. at p. 363.) "We have already observed of domestic disputes that '[o]fficers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim.' [Citation.] Such exigencies may *often* mean that 'initial inquiries' produce nontestimonial statements." (*Davis*, *supra*, 547 U.S. at pp. 832.) Although domestic violence cases often have a narrower zone of potential victims than cases involving threats to public safety, "[a]n assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." (*Bryan*, *supra*, at p. 363.)

Defendant argues that Doe's statement is testimonial because there is no evidence Officer Mason believed there was an ongoing emergency when he interviewed Doe. Defendant maintains that nothing in the record suggests that when Officer Mason interviewed Doe, Officer Mason was aware that defendant had pushed M.H. or that he was a threat to the public. He asserts there was no evidence Officer Mason was told before interviewing Doe that defendant pushed M.H. or that defendant was armed. But there was evidence that Officer Mason had been communicating with other officers before and while taking Doe's statement. Doe's recorded statement also suggested that Officer Mason had contact with M.H. before taking Doe's statement, and therefore may have been aware of the incident in which defendant pushed M.H. During the initial 18-

14

minute portion of Doe's statement, the record shows that M.H. was present and commented during Doe's statement. While it is unclear as to whether Officer Mason knew defendant had pushed M.H., a reasonable inference could be made he had heard about it, which would have raised a concern that defendant posed a threat to the public while at large.

Defendant relies on *Davis* and its companion case, *Hammon v. Indiana*, No. 05-5705; 829 N.E.2d 444, 446 (Ind.2005) (*Hammon*),[4] for the proposition there was no actual or perceived ongoing emergency. In *Hammon*, officers responded to a domestic violence report. Upon arriving at the home of Amy and Hershel, the officers separately interviewed the two in different rooms. Amy signed an affidavit and did not appear at trial. The trial court permitted the use of Amy's statement at trial, finding that it qualified as an excited utterance that was not testimonial. (*Davis*, *supra*, 547 U.S. at p. 821.) The Supreme Court in *Davis* reversed, holding the statement was testimonial because it was not made during an ongoing emergency. (*Id*. at pp. 829-831, 834.) The court in *Davis* reasoned that there was no active argument between Amy and Hershel when the police arrived, Amy was separated and protected from Hershel by the police, and during Amy's interview, the police questioned her about potentially criminal past events.

Defendant's reliance on *Davis* and *Hammon* is misplaced because Herschel, the defendant in *Hammon*, did not attack anyone other than Amy and Herschel was not at large. He was detained by the police when the police interviewed Amy. In addition, in

---

[4] Both cases were decided together in *Davis*, *supra*, 547 U.S. 813.

15

the instant case, questioning regarding defendant's appearance and identity was not testimonial. The requested information was relevant to identifying defendant as the perpetrator and apprehending him, and determining whether he was a risk to the public. Doe's statement was also nontestimonial because its purpose was, in part, to determine the seriousness of her injuries and whether she needed immediate medical treatment.

Even in the absence of direct evidence that Officer Mason was aware before questioning Doe that defendant may have posed a risk to the public based on defendant pushing M.H., there is a sufficient objective basis for concluding the primary purpose of Doe's initial 18-minute interview was not testimonial under *Crawford* and its progeny. When Officer Mason arrived at the crime scene and interviewed Doe shortly after defendant assaulted Doe, he encountered an agitated, tearful, shaken up victim, who had recently been violently assaulted. Doe told Officer Mason defendant had repeatedly beat her with his fists and had hit her with a chair three times. She also stated defendant had struck her so forcefully in the head that she thought she was going to die and had difficulty with recall and formulating her thoughts. Doe indicated she was not able to think clearly and initially could not remember her two-year-old daughter's birth date.

Doe's statement provided Officer Mason with information to assess and address the situation and Doe's medical needs, including taking steps to evaluate potential threats to others by defendant, apprehend defendant, and assess and address Doe's injuries, which may have included a concussion. An additional factor favoring a finding that Doe's statement was nontestimonial is the informality of the encounter between Doe and

16

Officer Mason when he interviewed her.  (*People v. Chism*, *supra*, 58 Cal.4th at p. 1289.)  Doe's interview was not conducted at the police station.  Rather, for her own safety, Doe was taken into the motel employee breakroom.  Under the totality of these unique circumstances, viewed objectively, we conclude the 18-minute portion of defendant's statement, taken before defendant was apprehended, was nontestimonial.

Defendant argues this case is nearly identical to *People v. Roberts* (2021) 65 Cal.App.5th 469 (*Roberts*), in which the court concluded the victim's statement to the police constituted inadmissible testimonial hearsay.  (*Id.* at pp. 477-478.)  In *Roberts*, a guest informed the hotel manager that the victim was screaming in her hotel room.  The manager went to the room.  The victim appeared scared and told the manager that the defendant had beaten her with a belt.  She showed him marks on her back from the belt.  The manager took the victim to the hotel office.  While the manager was calling the police, defendant approached, looking angry and holding a belt.  By the time the police arrived, the defendant had left and was not apprehended for several weeks.  When interviewed, the victim showed the police the marks on her back, told the police the defendant had whipped her, and said that the defendant had been violent with her in the past.

The *Roberts* court concluded the primary purpose of the victim's statement was to establish the identity of the defendant for use in a later criminal prosecution.  (*Roberts*, *supra*, 65 Cal.App.5th at p. 478.)  The *Roberts* court reasoned that when the police arrived at the hotel, the victim was safely with the manager in the hotel office, the

17

defendant had left the scene, and the victim told the police during her statement what had previously happened.  (*Id*. at pp. 473, 478.)  Under such circumstances, the *Roberts* court concluded there was not an ongoing threat to the victim or the public.  (*Id*. at p. 478.)

*Roberts* is distinguishable.  In the instant case, the initially requested information was relevant to determining the circumstances of the assault, whether defendant was a risk to the public, and the seriousness of Doe's injuries for purposes of evaluating whether she needed immediate medical treatment.  An objective evaluation of the interview and its related circumstances demonstrate that Doe's interview was not taken primarily for the purpose of producing evidence for a later trial.  The nontestimonial nature of Doe's interview ended when defendant was apprehended and Officer Mason determined that the paramedics should be called to evaluate Doe's injuries.

D. *Harmless Error*

Even if the trial court erred in admitting Doe's videotaped 18-minute interview statement, any such error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *Romero*, *supra*, 44 Cal.4th at p. 422.)  Defendant argues that the evidence constituted prejudicial error because Doe's statement was highly inflammatory, the prosecutor relied heavily on the evidence during closing argument, the jury requested to review the videotaped interview during deliberations, and the evidence supporting the charges was weak and unreliable.

We disagree.  Objectively evaluating the circumstances of Doe's statement, we conclude strong evidence supports defendant's conviction for corporal injury (count 1),

18

including his recorded statement during a jailhouse call, in which he said he would not be able to see his and Doe's two-year-old daughter grow up, and immediately changed the subject when Doe told him that he "beat her ass." Also, hotel patron R.L.'s testified she saw defendant chasing Doe, swinging his arms at Doe and yelling that he was going to kill Doe. Doe's leg injury and other injuries, including a fresh scratch on her back and lip, and redness and puffiness of Doe's face, also supported defendant's conviction. In addition, the police found a chair on the bed in the motel room where Doe and defendant were staying, which defendant had likely used to strike Doe. M.H.'s statement and testimony that Doe was crying and defendant chased after her and pushed M.H. when he attempted to intervene, further supported defendant's conviction for corporal injury.

This same evidence also supported defendant's conviction for assault with a deadly weapon (count 2). The evidence supported findings that defendant willfully assaulted Doe using a heavy wooden chair with metal legs and his fists resulting in injuring Doe, with knowledge doing so would lead to use of force against Doe. Based on the strong evidence, it is probable the jury would have found defendant guilty of counts 1 and 2, even in the absence of Doe's videotaped statement. Therefore any error in admitting Doe's statement was harmless beyond a reasonable doubt. (*Chapman v. California*, *supra*, 386 U.S. at p. 24; *Romero*, *supra*, 44 Cal.4th at p. 422.)

19

IV.

SENTENCING UNDER SECTION 654

Defendant contends the trial court abused its discretion by imposing separate sentences on count 1 (corporal injury with a prior) and count 2 (assault with a deadly weapon), instead of staying the sentence on count 2 under section 654. We disagree.

A. *Applicable Legal Principles*

The version of section 654, subdivision (a), in effect when defendant was sentenced on September 1, 2021, provided: "An act or omission that is punishable in different ways by different provisions of law *shall be punished under the provision that provides for the longest potential term of imprisonment*, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."[5] (Italics added.)

The inquiry to determine whether separate sentences may be properly imposed pursuant to section 654 is "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19). That inquiry turns on "the intent and objective" of the defendant. (*People v.*

---

[5] Section 654 was amended, effective January 1, 2022, as follows: "An act or omission that is punishable in different ways by different provisions of law *may be punished under either of such provisions*, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (Italics added to show new added language.)

20

*Correa* (2012) 54 Cal.4th 331, 335-336.) "'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*Ibid*.) However, "multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm. [Citations.] 'Separate sentencing is permitted for offenses that are divisible in time . . . .'" (*People v. Felix* (2001) 92 Cal.App.4th 905, 915.)

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry. . . . We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act – i.e., a course of conduct – do we then consider whether that course of conduct reflects a single "'intent and objective'" or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311-312.)

Appellate courts have cautioned against viewing a defendant's intent and objective too broadly. (*People v. Perez* (1979) 23 Cal.3d 545, 552-553.) "To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to [ensure] that a defendant's punishment will be commensurate with his culpability." (*Id*. at p. 552.) "[I]f a series of acts are committed within a period of time during which reflection was possible [citation], section 654 does not apply." (*People v. Kelly* (2016) 245 Cal.App.4th 1119, 1136.) "Under section 654, 'a course of conduct divisible in time, although directed to one objective,

21

may give rise to multiple violations and punishment. [Citations.]' [Citations.] This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.) The trial court's findings that crimes were divisible are upheld if supported by substantial evidence. (*Ibid*.)

B. *Analysis*

During sentencing, the trial court declined to stay sentencing on count 2 under section 654, concluding that there was substantial evidence defendant had separate, independent criminal objectives when he committed counts 1 and 2. The trial court stated that defendant's acts of striking Doe with his fists while she was lying on her back on the bed were independent from defendant's subsequent act of striking Doe with a chair after she slid off the bed and made a dash for the door. The trial court found that circumstantial evidence supported a reasonable finding that defendant struck Doe forcefully in the back of the head with a chair while she was standing in the doorway. Such conduct, the court concluded, demonstrated a greater, more vicious level of violence, which supported sentencing defendant separately for assaulting Doe with his fists on the bed (count 1) and striking Doe with a chair (count 2).

Defendant argues there was not substantial evidence to support a finding that counts 1 and 2 were separate offenses, incident to distinct, separate criminal objectives. Defendant asserts the two crimes were part of the same course of conduct, in which

defendant had the singular objective of continuously assaulting Doe. We disagree. There is substantial evidence that while Doe was lying on the bed, defendant assaulted Doe with his fists and hit her with a chair. Doe kicked defendant while he was attacking her. One of her kicks caused defendant to momentarily stop beating her. During this brief interlude, Doe slid off the bed and ran for the door. When defendant regained his focus, he forcefully hit Doe in the back of the head while she was in the doorway, about to run out of the room. A reasonable inference can be made from Doe's description of the impact to her head and the presence of the chair on the bed in her motel room that defendant hit her in the back of the head with the chair. This evidence is more than sufficient to support the determination that defendant's act of assaulting Doe on the bed and then hitting her in the head while she was in the doorway were separate offenses, committed after a sufficient period of time to reflect and form a new, separate objective.

*People v. Nubla* (1999) 74 Cal.App.4th 719, is similar to the instant case. In *Nubla*, the trial court separately sentenced the defendant on the offenses of assault with a deadly weapon and corporal injury to a spouse. The defendant argued section 654 applied because the offenses were part of an indivisible course of conduct. Upon becoming angry with his wife, the defendant in *Nubla* pushed her onto the bed, causing her nose to bleed, pushed a gun into the back of her head, and turned her over and pushed the gun into her mouth. The *Nubla* court concluded that separately punishable acts had occurred because none of the offenses were committed as a means of committing the other offenses, and none were incidental to any others. (*Id*. at p. 731.) The *Nubla* court

23

explained that the defendant's "act of pushing his wife onto the bed and placing the gun against her head was not done as a means of pushing the gun into her mouth, did not facilitate that offense and was not incidental to that offense." (*Ibid.*)

Likewise, here, defendant's act of striking Doe with his fists and hitting her with the chair while she lay on the bed did not facilitate defendant's subsequent offense of forcefully hitting her in the back of the head with the chair when she tried to run out the door. As in *Nubla*, the trial court was entitled to conclude that each act was separate for purposes of section 654. (*People v. Nubla*, *supra*, 74 Cal.App.4th at p. 731; see also *People v. Ibarra* (2007) 151 Cal.App.4th 1145, 1153 ["Where a defendant is guilty of similar and related crimes committed over a short period of time but nonetheless entertained multiple intents and purposes, sentencing may be imposed on each crime."].)

Defendant cites *People v. Mendoza* (2022) 74 Cal.App.5th 843 (*Mendoza*), for the proposition the evidence did not demonstrate that his act of assaulting Doe on the bed and then hitting her in the back of the head while she was in the doorway were motivated by distinct criminal intents and objectives. In *Mendoza*, the defendant attempted to extort money from the victim by slashing the victim's face with a knife and punching the victim in the mouth with his fist. The *Mendoza* court affirmed the trial court ruling that section 654 barred separate punishment for the defendant's convictions for assault with a deadly weapon and assault with force likely to produce great bodily injury. (*Id.* at pp. 853-854.)

The *Mendoza* court reasoned that there was no evidence that the knife thrust to the victim's face and punch to his mouth were "'separated by periods of time during which

24

reflection was possible.'" (*Mendoza*, *supra*, 75 Cal.App.5th at p. 855.) The *Mendoza* court elaborated: "Rather, Reyes's testimony supports Defendant's characterization of the blows as a 'classic "one-two punch."'" (*Ibid*.)

Unlike in *Mendoza*, here, defendant's the act of assaulting Doe on the bed and his act of forcefully striking Doe in the back of the head were not uninterrupted blows committed without the opportunity to reflect and form separate objectives and intents. The acts were separated by a period of time while Doe slid off the bed, stood up, and ran to the motel room doorway to flee. The court thus reasonably concluded there was evidence showing defendant had time to reflect and form a new, separate objective and intent of hitting Doe in the back of the head to stop her from leaving the motel. Under these circumstances, the trial court did not abuse its discretion under section 654 by imposing separate sentences on counts 1 and 2.

V.

*YURKO* ERROR

On August 13, 2021, after the jury found defendant guilty, defendant admitted the prior conviction allegation on count 1 (corporal injury with a prior; § 273.5, subd. (f)). On September 1, 2021, the trial court sentenced defendant on count 1 to the upper term of five years. Defendant contends that the trial court committed *Yurko* error (failure to secure a knowing and intelligent waiver of each constitutional right) by not advising defendant that his admission to the truth of the prior conviction allegation could expose him to the upper term.

25

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. [Citation.] As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each. [Citations.]" (*People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*).) These are commonly referred to as "*Boykin–Tahl* advisements." (*People v. Mosby* (2004) 33 Cal.4th 353, 365.) This rule has been extended to apply "when a defendant admits the truth of a prior conviction allegation that subjects him to increased punishment." (*Cross*, *supra*, 61 Cal.4th at p. 170, citing *Yurko*, *supra*, 10 Cal.3d 857.)

In *Cross*, *supra*, 61 Cal.4th 164, the Supreme Court addressed whether *Boykin–Tahl* advisements are required when a defendant stipulates to suffering a prior conviction under section 273.5, subdivision (f). The defendant in *Cross* was charged with felony infliction of corporal injury under section 273.5, subdivision (a). (*Cross*, *supra*, at p. 168.) The information also alleged the defendant had suffered a prior conviction under section 273.5, to which the defendant stipulated. The trial court accepted the stipulation without advising the defendant of his constitutional rights or the penal consequences of the stipulation or eliciting a personal waiver of those rights. Based on the stipulation, the jury convicted the defendant of the charged offense and found the prior conviction allegation true. The defendant's prior conviction exposed him to a prison term of two,

26

four, or five years instead of two, three, or four years.  The court sentenced the defendant to the higher term authorized by subdivision (f)(1).

On appeal, the defendant in *Cross* argued the stipulation to the prior conviction allegation was invalid under *Boykin v. Alabama* (1969) 395 U.S. 238, *In re Tahl* (1969) 1 Cal.3d 122, and *Yurko* because he was never advised of his constitutional rights and it resulted in a higher sentence.  (*Cross*, *supra*, 61 Cal.4th at pp. 168-169.)  The Supreme Court held that because the defendant had admitted "'every fact necessary to imposition of the additional punishment other than conviction of the underlying offense' [citation], he was entitled to receive *Boykin–Tahl* warnings before he made this admission."  (*Cross*, *supra*, at p. 174.)  The *Cross* court noted that, even if the criminal complaint's express mention of section 273.5, subdivision (f)(1) was sufficient to put the defendant on notice of the penal consequence of his stipulation, nothing in the record showed that the defendant was aware of his right to a fair determination of the truth of the prior conviction allegation.  (*Cross*, *supra*, at p. 180.)

In reaching its holding, the *Cross* court explained that "the record contains no indication that the defendant's "stipulation was knowing and voluntary, and the Attorney General does not contend otherwise.  After counsel read the stipulation in open court, the trial court immediately accepted it.  The court did not ask whether Cross had discussed the stipulation with his lawyer; nor did it ask any questions of Cross personally or in any way inform him of his right to a fair determination of the prior conviction allegation. [Citation.]  The stipulation occurred during the prosecutor's examination of the first

27

witness in the trial; the defense had not cross-examined any witness at that point. [Citation.]  Further, we have no information on how the alleged prior conviction was obtained.  [Citation.]" (*Cross*, *supra*, 61 Cal.4th at p. 180.)

Unlike in *Cross*, here, before the trial court entered the stipulation and accepted defendant's waiver of his rights to trial of the prior allegation, the court advised defendant of his constitutional rights and informed him of the penal consequences of the stipulation and waiver.  During this court proceeding, the defendant confirmed that he understood that it was alleged in connection with count 1 that he was convicted on July 16, 2015, of violating section 273.5, subdivision (a).  Defendant confirmed he understood that the jury had not yet been discharged and therefore was available to hear the evidence establishing the prior conviction.  The court explained that if the prior charge was tried, the prosecution would have to prove beyond a reasonable doubt the truth of the prior. Defendant confirmed that he nevertheless wished to admit the prior subject to the jury returning a guilty verdict on count 1, in which case defendant understood the prior would apply.  Defendant further confirmed he was willing to admit the prior and not have the jury decide it.

The trial court then again explicitly informed defendant of his constitutional rights in connection with the prior, and defendant confirmed he understood he was waiving those rights, including the right to a jury trial to determine the alleged prior; the right to confront and cross-examine witnesses regarding the prior; the right to present a defense and to testify regarding the prior; and the right not to incriminate himself regarding the

28

prior. Defendant confirmed he understood that the consequence of entering an admission of the prior was that it would increase his sentence and increase exposure to a prison term on count 1. The court explained that the enhanced term would be two-three-five years.[6] Defendant acknowledged he understood this and that, by adding the prior to count 1, his sentence would result in increased exposure to a maximum term of five years.

Defendant further confirmed he had not taken anything that would have impaired his ability to understand what was occurring that day, such as medication, drugs, or alcohol. Defendant stated he understood the proceedings and discussed with his attorney whether he should admit the prior. He also discussed with his attorney the possible defenses to the prior allegation. Defendant said he knew all his rights, knew all of their consequences, and was prepared to waive those rights in order to admit the prior. Counsel for the parties confirmed that no further voir dire was required and that there was a factual basis supporting entry of defendant's admission of the prior, consisting of Exhibit 22, which was a certified record of the prior.

Under the totality these circumstances, we conclude that, unlike in *Cross*, the court properly advised defendant of his constitutional rights and the penal consequences of the stipulation, defendant understood those rights, the court elicited a personal waiver of those rights, and defendant knowingly and voluntarily waived those rights. Therefore, we reject defendant's contention that the trial court committed *Yurko* error by not

---

[6] The court erred in stating the enhanced term was two-three-five years, whereas the correct potential term was two-four-five years. This error was harmless because the court correctly informed defendant that his maximum exposure was five years.

advising defendant that his admission to the truth of the prior conviction allegation could expose him to an upper term sentence on count 1.

VI.

S.B. 567

Defendant contends the trial court erred in relying on the same prior conviction (dual use) to convict defendant of violating section 273.5, subdivision (f)(1) and to impose the upper term on count 1. Defendant forfeited the dual-use objection by not raising it during sentencing and raising it for the first time on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) In *Scott*, the court concluded that "the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are . . . cases in which the court purportedly erred because it double-counted a particular sentencing factor . . . ." (*Ibid.*) But even assuming without deciding dual-use reliance on the same prior conviction was not prejudicial, we conclude that defendant's sentence must be reversed and the matter remanded for resentencing under S.B. 567.

With regard to imposing the upper term on count 1, the court stated it reviewed and considered the criteria set forth in California Rules of Court 4.421(a) and (b),[7] rule 423 (a) and (b), and rule 4.410 (a) and (b). The court sentenced defendant to six years in prison, consisting of the upper term of five years on count 1 and a separate, consecutive term of one year on count 2. When imposing the maximum sentence on count 1, the

---

[7] Undesignated rule references are to the California Rules of Court.

30

court stated it relied on the following aggravating factors: (1) the victim was vulnerable, with her two-year-old child present during the violent crime, (2) during the assault, Doe was subjected to a high degree of violence, cruelty, and viciousness, (3) defendant's attack on Doe manifested violence that demonstrated defendant was a danger to society, and (4) defendant had a criminal history. The court also found there were no applicable mitigating circumstances.

The court further stated that, "having reviewed the entire record of the case, including the evidence adduced at the trial in this matter, including its analysis of the facts, the totality of the circumstances attendant to commission of the crimes, having considered oral argument of counsel, probation report in this matter, history of the defendant's – both his general background history, character, and criminal history, in light of the sentencing objectives of Rule 4.410 (a) and (b), the Court finds that punishment is of primary importance as a sentencing objective in this matter."[8]

Defendant contends that under retroactive application of S.B. 567, his upper term on count 1 must be vacated and this case remanded for resentencing on count 1 because section 1170, as amended by S.B. 567, provides in subdivision (b)(2) that "[t]he court

---

[8] The probation sentencing report states the following aggravating factors apply: (1) the crime involved great violence, great bodily harm, or the threat of great bodily harm or other acts disclosing a high degree of cruelty, callousness or viciousness (rule 4.421(a)(1)); (2) the victim was particularly vulnerable (rule 4.421(a)(3)); (3) the defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); (4) the defendant had prior convictions as an adult or sustained petitions as a juvenile that are numerous or of increasing seriousness (rule 4.421(b)(2)); and (5) the defendant served a prior term in prison under section 1170, subdivision (h).

may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Section 1170, subdivision (b)(2), as amended by S.B. 567, thus made the middle term the presumptive term. A trial court may now only impose an upper term when circumstances in aggravation exist and the facts underlying the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by the jury or the court acting as the factfinder. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) However, the trial judge may rely on certified records of a defendant's prior convictions. (§ 1170, subd. (b)(3).)

The parties agree S.B. 567 applies retroactively to this case under *In re Estrada* (1965) 63 Cal.2d 740, because the judgment was not final as of January 1, 2022, when S.B. 567 took effect. (See *In re Estrada*, *supra*, 63 Cal.2d at pp. 746-748.) But the People argue that this court should not remand the case for resentencing because any sentencing error under S.B. 567 was harmless. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 838-843.) The People assert there was undisputed evidence establishing each of the aggravating factors beyond a reasonable doubt and the trial court would have exercised its discretion the same way, had it been aware of the statutory presumption under S.B. 567. We disagree.

In *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*), the defendant was convicted in 2020, before S.B. 567, when the trial court had broad discretion to determine whether imposition of the lower, middle, or upper term (former § 1170, subd. (b)). Consistent with the law at that time, the trial court identified a number of factors in aggravation and no factors in mitigation. The trial court imposed an upper term sentence on count 3 (being a felon in possession of a firearm) based on the following aggravating factors: "(1) the crime involved great violence and cruelty, viciousness or callousness; (2) the defendant was armed with a weapon at the time of the crime; (3) the victim was particularly vulnerable; (4) the crime indicated sophistication/planning; (5) the defendant took advantage of a position of trust; (6) the defendant's violent conduct indicates a serious danger to society; (7) the defendant's prior convictions are numerous and of increasing seriousness; (8) the defendant served a prior prison term; and (9) the defendant's prior performance on probation, mandatory supervision, post release community supervision or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(a)(1)-(3), (8), (11), (b)(1)-(3), (5).)" (*Lopez*, *supra*, at p. 464, fn. 8.)

While the *Lopez* defendant's appeal was pending, S.B. 567 was enacted, effective on January 1, 2022. The defendant filed supplemental briefing requesting the appellate court to vacate his sentence and remand for resentencing based in part on retroactive application of S.B. 567. The *Lopez* court did so in accordance with the defendant's request. (*Lopez*, *supra*, 78 Cal.App.5th at p. 461.)

The *Lopez* court explained that when "a sentencing factor must be found true by a jury beyond a reasonable doubt and the court fails to submit that factor to the jury, the error in the court's reliance on that fact may be subject to harmless error review as to whether the lack of a finding by the jury was prejudicial." (*Lopez*, *supra*, 78 Cal.App.5th at p. 465.) According to *Lopez*, such an error does not require reversal if this court determines it was "'harmless beyond a reasonable doubt, applying the test set forth in *Chapman v. California*, *supra*, 386 U.S. 18. . . . The failure to submit a sentencing factor to a jury may be found harmless if the evidence supporting that factor is overwhelming and uncontested, and there is no 'evidence that could rationally lead to a contrary finding." [Citations.]'" (*Lopez*, *supra*, at p. 465.)

The *Lopez* court further explained that, "[i]n order to conclude that the trial court's reliance on improper factors that were not found true by a jury or admitted by Lopez was not prejudicial, we would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury (see § 1170, subd. (b))." (*Lopez*, *supra*, 78 Cal.App.5th at pp. 465-466, fn. omitted.)

In *Lopez*, the court concluded that the People had not established that a jury would have found true beyond a reasonable doubt every aggravating factor on which the court relied. The *Lopez* court explained: "Because the prior version of the determinate

34

sentencing law (§ 1170 et seq.) did not require the prosecution to present evidence directly related to the aggravating factors at trial, the evidence in the record does not permit us to assess whether a jury would have found these factors true beyond a reasonable doubt. Further, Lopez would have had no reason to present evidence that might have contradicted evidence supporting truth of the facts underlying the aggravating factors relied on by the trial court. As a result, we cannot say that as to every factor 'the evidence supporting that factor is overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding." [Citation.]' [Citation.] It would be entirely speculative for us to presume, based on a record that does not directly address the aggravating factors, what a jury would have found true in connection with these factors." (*Lopez*, *supra*, 78 Cal.App.5th at p. 466.)

The court in *Lopez* also rejected the People's contention that remand for resentencing was not required because the trial court relied on at least one permissible factor that does not require an admission or a true finding under the amended version of the statute. The single permissible factor in *Lopez* related to the defendant's record of prior convictions. (*Lopez*, *supra*, 78 Cal.App.5th at p. 466.) Under subdivision (b)(3) of section 1170, a trial court "'may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.'" The People argued that, because the court could have relied on the defendant's prior convictions without submitting those facts to the jury, the trial

35

court's imposition of the upper term sentence on count 3 could be affirmed.  (*Lopez*, *supra*, at pp. 466-467.)

The *Lopez* court rejected this proposition, as do we, that the court need only find the presence of a single valid factor, such as a prior conviction established by a certified record of conviction, to obviate the need to remand the case for resentencing.[9]  (*Lopez*, *supra*, 78 Cal.App.5th at p. 466.)  The *Lopez* court stated that, where the trial court relied on multiple aggravating factors, "the presence of a single valid aggravating factor is insufficient to permit a reviewing court to affirm a sentence imposed in violation of the revised version of section 1170, subdivision (b).  Rather, . . . a determination by a reviewing court that a jury would have found true only some subset of the aggravating factors on which the trial court relied in selecting an upper term sentence (or that the record reflects the presence of one or more otherwise valid factors based on a defendant's prior convictions) would require the reviewing court to conduct a *second* prejudice inquiry, i.e., whether there is a reasonable probability that the trial court would have selected a term other than the upper term if it had relied solely on a subset of the original factors on which it previously relied."  (*Id*. at p. 466, fn. 10.)

The *Lopez* court explained that when finding there is no prejudice, the court must "be assured that the trial court *would have exercised its discretion to impose the upper*

_____

[9]  The *Lopez* court rejected the court's conclusion in *People v. Flores* (2022) 75 Cal.App.5th 495, 500-501, that an upper term may be affirmed without remanding for resentencing as long as the reviewing court is satisfied, beyond a reasonable doubt, that the jury would have found true at least one aggravating circumstance.  (*Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.)

*term* based on a single permissible aggravating factor, or even two or three permissible aggravating factors, related to the defendant's prior convictions, when the court originally relied on both permissible and impermissible factors in selecting the upper term. When a trial court increases a defendant's sentence by relying on factors that are inapplicable, duplicative, or improperly weighed, a reviewing court assesses the prejudice to the defendant by determining whether it is reasonably probable that a more favorable sentence would have otherwise been imposed absent the trial court's improper reliance on such factors. [Citation.]" (*Lopez*, *supra*, 78 Cal.App.5th at p. 467.)

The *Lopez* court noted that "'an erroneous understanding by the trial court of its discretionary power is not a true exercise of discretion.'" (*Lopez*, *supra*, at p. 467, quoting *People v. Marquez* (1983) 143 Cal.App.3d 797, 803.) The court in *Lopez* therefore concluded that, where a trial court has not acted with informed discretion, the appropriate remedy is to remand for resentencing unless the record clearly indicates that the trial court would have reached the same conclusion even if it had been aware that it had such discretion. (*Lopez*, *supra*, at p. 467, quoting *Gutierrez*, *supra*, 58 Cal.4th at p. 1391.)

The *Lopez* court explained: "under the new version of the triad system set forth in section 1170, the initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in

37

exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term." (*Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.)

The *Lopez* court further stated that if the answer to the first question is "no," this court must "then consider the second question, which is whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836, that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.)

In *People v. Dunn* (2022) 81 Cal.App.5th 394 (rev. granted Oct 12, 2022, S275655) (*Dunn*), the court offered a third approach to determining harmless error, as opposed to the harmless error standards applied in *Flores* and *Lopez*. (*Dunn*, *supra*, at pp. 398, 405-410.) The court in *Dunn* disagreed with the *Flores* standard, concluding that "[a] reviewing court concluding beyond a reasonable doubt that the jury would have found the facts underlying *a single circumstance in aggravation* true beyond a reasonable doubt is insufficient to conclude that any error under section 1170, subdivision (b) was harmless." (*Dunn*, *supra*, at pp. 405-406; see also *Lopez*, *supra*, 78 Cal.App.5th at pp.

38

465-468.)  And the *Dunn* court disagreed with *Lopez* that the *Chapman* harmless error standard must be applied in the first step of analysis to determine whether *all* of the aggravating circumstances relied upon by the trial court would have been found true by the jury.  (*Dunn*, *supra*, at p. 408.)

In *Dunn*, the court concluded that "one aggravating circumstance must be reviewed pursuant to *Chapman*, but the remaining aggravating circumstances involve only a state-created right to a jury trial that must be reviewed pursuant to *Watson.*" (*Dunn*, *supra*, 81 Cal.App.5th at p. 409.)  We conclude that, regardless of whether the *Watson* or *Chapman* harmless error standard applies, remand and resentencing are required here.  The record before us does not support finding under *Chapman* or *Watson*, "that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term." (*Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.)  The record also does not support finding under *Chapman* or *Watson*, that the trial court would have "exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied." (*Lopez*, *supra*, at p. 467, fn. 11.)  The trial court offered no indication that it would have selected an upper term sentence even if only a single aggravating factor or some subset of permissible factors were present.

39

In addition, we cannot be certain that had the trial court been aware that the middle term was the presumptive term, it would have nevertheless imposed the upper term. SB 567 significantly changed the court's discretion by requiring the court to presume the middle term is the presumptive maximum term. (§ 1170, subd. (b)(2).) The California Supreme Court in *Gutierrez* concluded resentencing under analogous circumstances was required unless the record clearly indicated the trial court would have imposed the upper term had it known of the new presumptive middle term. (*Gutierrez, supra*, 58 Cal.4th at p. 1391.) In *Gutierrez*, a change in the law (§ 190.5, subd. (b)) retroactively expanded the trial court's sentencing discretion by eliminating a presumption in favor of the penalty of life without the possibility of parole for 16-to 17-year-old juveniles convicted of special-circumstance murder.

The California Supreme Court in *Gutierrez* stated that "'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*Gutierrez, supra*, 58 Cal.4th at p. 1391, quoting *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8; see also *Lopez, supra*, 78 Cal.App.5th at p. 467.)

Based on this standard, the court in *Gutierrez*, concluded that, although the trial court may have understood that it had some discretion in sentencing, the record on appeal did not clearly indicate that it would have imposed the same sentence had the sentencing court been aware of its actual scope of discretion. Because the trial court operated under a governing presumption that differed from the presumptive term imposed under new, retroactively applicable statutory sentencing law, the *Gutierrez* court concluded it could not "say with confidence what sentence" the sentencing court "would have imposed absent the presumption." (*Gutierrez, supra*, 58 Cal.4th at p. 1391.) The *Gutierrez* court thus remanded the case for resentencing. (*Id*. at pp. 1392-1393.)

Likewise, here, remand for resentencing is required because the trial court operated under a governing presumption that differed from the presumptive middle term, and this court cannot "say with confidence what sentence" the sentencing court would have imposed had it been aware of middle term presumption. (*Gutierrez, supra*, 58 Cal.4th at p. 1391; *Lopez, supra*, 78 Cal.App.5th at p. 468.) In addition, the record does not clearly show that the sentencing court would have exercised its discretion to impose an upper term based on the sole permissible aggravating factor of defendant's prior conviction, particularly given that the court relied on multiple aggravating factors in selecting the upper term. (*Lopez, supra*, at p. 468.)

On remand, the People may elect to proceed under the recent version of section 1170, subdivision (b), amended by S.B. 567, which requires the People to prove the existence of aggravating factors beyond a reasonable doubt to a jury, unless the defendant

waives the right to a jury and agrees to have the factors decided by the court beyond a reasonable doubt. Alternatively, the People may accept resentencing on the record as it stands.[10] (*Lopez*, *supra*, 78 Cal.App.5th at p. 468.)

VII.

DISPOSITION

The judgment of conviction is affirmed but defendant's sentence is vacated, and the matter is remanded for resentencing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.

---

[10] Defendant briefly mentions in his supplemental appellant's opening brief that if the matter is remanded for resentencing, the trial court should impose the presumptive lower term under Assembly Bill No. 124 (2021-2022 Reg. Sess.; Stats. 2021, ch. 695) (A.B. 124), which applies retroactively. A.B. 124 requires imposing the low term as the presumptive sentencing term for youthful offenders or those who have experienced childhood trauma, unless the court finds that imposition of the lower term would be contrary to the interests of justice because the aggravating factors outweigh the mitigating factors. (§ 1170, subd. (b)(6).) We agree this is a matter for the trial court, not this court, to consider, upon remand.